UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Kelly C. Maginnis,

      Plaintiff,

      v.                                               Civil Action No. 5:11-CV-36

Michael J. Astrue,
Commissioner of Social Security,

      Defendant.

## REPORT AND RECOMMENDATION
(Docs. 15, 20)

Plaintiff Kelly Maginnis brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Maginnis's motion to reverse the Commissioner's decision (Doc. 15), and the Commissioner's motion to affirm the same (Doc. 20). For the reasons stated below, I recommend that Maginnis's motion be GRANTED, in part; the Commissioner's motion be DENIED; and the matter be REMANDED for further proceedings and a new decision.

## Background

Maginnis was thirty-four years old on her alleged disability onset date of June 17, 2000. She did not graduate high school, but earned her GED and completed courses in advanced typing and data entry. She has work experience as a sales clerk at a

lumberyard, a kitchen helper at an assisted living facility, and an animal caregiver at a dog kennel. She has two children, but as of July 2008, they were no longer in her custody. (AR 441.)

On June 16, 2000, Maginnis was involved in a motorcycle accident, sustaining serious injury to her right ankle. (AR 272.) Surgery was emergently performed, and although the ankle largely healed, she has chronic ankle pain. She also suffers from back pain, hearing problems, asthma, and anxiety. With respect to mental impairments, Maginnis has been diagnosed with panic attacks with agoraphobia, and major depressive disorder. (AR 442.) She has also been diagnosed with cocaine abuse in remission, and the record reflects that she used cocaine in 2004 and 2005, and sold cocaine in 2006. (AR 269, 441-42.) She was eventually arrested for the sale of cocaine, resulting in her incarceration from May 20, 2008 until October 2, 2009. During that time, she worked part-time at the prison's print shop using machines to print papers, invitations, and business cards. (AR 92.) In 2008, Maginnis reported to a medical provider that she lived "a very isolated life living 7 miles in the woods by herself," and that she "does not like people." (AR 441; *see also* AR 87.)

In February 2008, Maginnis filed applications for social security income and disability insurance benefits. In her disability application, she alleged that she became unable to work on the day after her motorcycle accident, June 17, 2000. (AR 178.) She further alleged that the following conditions have limited her ability to work: a bad back, a crushed ankle with "4 plates and 12 screws," severe arthritis, and hearing problems. (*Id.*) She explained that she is unable to sit or stand for more than two hours at a time;

her ankle freezes up; she has no range of motion; one leg is shorter than the other; and she has a "hunch[ed] back," cramping, muscle spasms, pain, swelling, and numbing. (*Id.*) Maginnis's application was denied initially and upon reconsideration, and she timely requested an administrative hearing. The hearing was conducted on July 20, 2010 by Administrative Law Judge ("ALJ") Ruth Kleinfeld. (AR 73-97.) Maginnis appeared and testified, and was represented by an attorney. On October 6, 2010, the ALJ issued a decision finding that Maginnis was not disabled under the Social Security Act from her alleged onset date through the date of the decision. (AR 7-19.) A few months later, the Decision Review Board notified Maginnis that it had not completed its review of the claim during the time allowed, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-3.) Having exhausted her administrative remedies, Maginnis filed the Complaint in this action on February 10, 2011. (Doc. 3.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d).

3

The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), meaning "the most [the claimant] can still do despite [his or her mental and physical] limitations," based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Kleinfeld first determined that, although Maginnis had worked after the alleged onset date of June 17, 2000, that work was below substantial gainful activity levels, and thus she had not engaged in substantial gainful activity during the alleged disability period. (AR 9-10.) At step two, the ALJ found that Maginnis had the following severe impairments: "osteoarthrosis [of the] right ankle s/p fractures; s/p thoracic spine fracture; hearing loss; affective disorder with anxiety[;] and

4

cocaine abuse in remission." (AR 10.) Conversely, the ALJ found that Maginnis's asthma was "non-severe." (AR 11.) At step three, the ALJ found that none of Maginnis's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 11-12.)

Next, the ALJ determined that Maginnis had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), with the following restrictions:

> [S]he is able to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; to sit for up to 6 hours in an 8-hour workday; and to stand and/or walk for at least 2 hours in an 8-hour workday but up to 4-5 hours if given the option to periodically alternate positions from sitting to standing. She is able to perform occasional climbing of stairs and ramps, occasional postural activity, and occasional pushing/pulling with her right lower extremity. She is unable to climb ladders, ropes and scaffolds. She is able to perform simple (1-2 step) tasks in a low stress environment (no production quotas). She is able to understand normal conversational speech but requires a position which does not involve continuously noisy environments.

(AR 13.) Given this RFC, the ALJ found that Maginnis was unable to perform her past relevant work as a sales clerk at a lumberyard and a food service/cafeteria worker. (AR 18.) At the fifth and final step, the ALJ concluded that, if Maginnis had the RFC to perform the full range of light work, considering her age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. (AR 19.) But because Maginnis had "additional limitations," the ALJ instead used the Rule merely as a framework for determining that Maginnis was not disabled, finding that these limitations had "little or no effect on the light (and lesser[-]included sedentary) occupational base." (*Id.*) The ALJ concluded that Maginnis had not been under a disability from her alleged onset date through the date of the decision. (*Id.*)

5

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Poupore*, 566 F.3d at 305.  In its deliberations, the court should consider that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

I.  **Substantial Evidence Does Not Support the ALJ's Analysis of the Medical Opinions and RFC Determination.**

Maginnis contends that the ALJ did not correctly weigh the medical opinion evidence, and that the ALJ's RFC determination was not based on substantial evidence. The Commissioner disagrees.  For the reasons explained below, I find in favor of Maginnis on these issues.

In October 2002, Maginnis's treating orthopedist, Dr. Christopher Meriam, stated that, based on Maginnis's ankle and back injuries, she "certainly has a significant impairment," but "could probably do sedentary work."  (AR 327.)  He reiterated: "I expect that [Maginnis] should be able to do sedentary work duties on a full-time basis." (*Id.*)  The regulations define "sedentary" work as follows:

> [Sedentary work] involve[es] *lifting no more than 10 pounds at a time* and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. . . .
>
> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, *periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday*. . . .

SSR 83-10, 1983 WL 31251, at *5 (1983) (emphases added).  In contrast, "light" work is

defined as follows:

> [L]ight work [is defined as] *lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds*. Even though the weight lifted in a particular light job may be very little, *a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs*. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work . . . . Relatively few unskilled light jobs are performed in a seated position.
>
> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, *the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday*. Sitting may occur intermittently during the remaining time. . . .

*Id.* at *5-6 (emphases added).

In May 2010, Maginnis's treating primary care physician, Dr. John Leppman, also opined that Maginnis could perform only essentially sedentary work, noting that Maginnis could stand or walk for "at least 2 hours in an 8-hour workday" and sit for "about 6 hours in an 8-hour workday." (AR 510-11.) Dr. Leppman also noted that Maginnis could lift and/or carry "less than 10 pounds," and had "stamina limitations" regarding the use of her upper and lower extremities. (*Id.*) A few months later, in July 2010, Dr. Leppman checked off boxes on a document titled "Interrogatories for Dr. Leppman," opining that Maginnis's ankle and back pain would interfere with her ability to focus, concentrate, and pay attention in a work environment; and that she would need to lie down for several hours each day and change positions from sitting to standing at will. (AR 534-35.) Dr. Leppman further opined that Maginnis's depression and anxiety would cause her to miss three or more days of work each month. (AR 536.)

8

Without stating why, the ALJ afforded "significant weight" to Dr. Meriam's opinion and to Dr. Leppman's May 2010 opinion. (AR 17.) It can be inferred that this decision was based on the ALJ's determination that these opinions were most consistent with the record as a whole. (*Id.*) The ALJ did not, however, afford "compelling weight" to either of these opinions, finding that Maginnis was capable of "light" work (with conditions) rather than merely "sedentary" work as opined by Dr. Meriam and Dr. Leppman in his May 2010 opinion. (AR 13.) The ALJ stated: "[B]ased upon evidence of record with regard to her activities of daily living, [Maginnis] has the capacity to perform a somewhat greater range of sedentary/light exertion work." (AR 17.) The ALJ analyzed Dr. Leppman's July 2010 opinion in more detail, affording it only "limited weight" and stating that it was inconsistent with the record as a whole, "including evidence . . . with regard to [Maginnis's] activities of daily living, her part-time work activity, and her hobbies . . . ." (*Id.*) The ALJ found that the record did not support Dr. Leppman's July 2010 opinion that Maginnis needed to lie down for several hours each day and alternate positions at will, and would miss three or more days of work each month due to her mental limitations. (*Id.*)

Under the "treating physician rule," even when a treating physician's opinion is not given controlling weight, the opinion is still entitled to some weight because a treating physician "[is] likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence . . . ." 20 C.F.R. § 404.1527(d)(2). The regulations provide that when, as here, the ALJ decides to afford less than controlling

9

weight to a treating physician's opinion, the ALJ must consider various factors in determining how much weight is appropriate, including the nature and extent of the treatment relationship, whether the treating physician presents relevant evidence to support his or her opinion, and whether the treating physician's opinion is consistent with the record as a whole. *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 417 (W.D.N.Y. 2006) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); 20 C.F.R. § 404.1527(d)(2)-(6)).

I find that the ALJ's analysis of Dr. Leppman's more restrictive July 2010 opinion was proper, and that substantial evidence supports the ALJ's decision to afford limited weight thereto. Specifically, Dr. Leppman's opinion that Maginnis needed to lie down for several hours each day is not supported by the record. No other medical provider offered this opinion; and although Maginnis testified at the administrative hearing that she spent "anywhere from four hours or more" lying down each day (AR 83), she did not mention needing to lie down for several hours each day either in her Function and Pain Reports to the Social Security Administration or in her self-reporting to her medical providers. Although Maginnis noted in a Pain Report that lying down or sitting helped alleviate her pain, she stated she would need to lie down or sit for only a "short time," a "very short time," or "[a] short period," not for several hours. (AR 245, 246, 247.)

Dr. Leppman's opinion that Maginnis's depression and anxiety would cause her to miss at least three days of work each month is also unsupported. The record demonstrates that, although Maginnis had periods of depression and anxiety, her mental problems were largely situational (*see, e.g.,* AR 418 (depressed while facing prison

10

disciplinary action for conspiracy to bring tobacco into facility)), and did not significantly affect her ability to function (*see, e.g.,* AR 440 ("emphasiz[ing]" to examining consulting psychologist that she "did not apply [for disability benefits] because of anxiety and does not really know why she is being evaluated for anxiety")). Moreover, as the ALJ noted, Maginnis does not appear to have sought mental health treatment until April 2008, almost eight years into the alleged disability period. (*See* AR 16.) Further, treatment notes from Dr. Leppman in November 2009, February 2010, March 2010, and May 2010 reveal that Maginnis's depression was relieved by antidepressant medication; her mood and affect were normal; and she frequently did not complain about symptoms of depression and anxiety. (AR 521, 523-524, 526-27, 530, 532.) A May 2008 prison medical note regarding Maginnis's depression and anxiety records that her medication dose was "low," and she "decided she d[id] not need or want any [medication for mental problems]." (AR 426.) Although Maginnis was diagnosed in the same month with adjustment disorder with mixed anxiety and depression, she was assigned a Global Assessment of Functioning ("GAF") score of 65, which indicates only "'[s]ome mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . ., but *generally functioning pretty well*, has some meaningful interpersonal relationships.'" (AR 425.) *Zabala v. Astrue*, 595 F.3d 402, 405 n.1 (2d Cir. 2010) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV")*, at 34 (4th ed. 2000)) (emphasis added).

Although the ALJ properly evaluated Dr. Leppman's July 2010 opinion, I find that the ALJ's assessment of Dr. Leppman's May 2010 opinion and Dr. Meriam's October

2002 opinion is not supported by substantial evidence. The ALJ stated that she gave "significant weight" to these opinions, but her RFC determination does not reflect either opinion. (AR 17; *see* AR 13.) Specifically, as noted above, the ALJ determined that Maginnis could stand or walk for up to four or five hours in an eight-hour workday, if given the option to alternate between sitting and standing; and could lift and/or carry up to twenty pounds occasionally and ten pounds frequently. (AR 13.) Neither the opinions nor the treatment notes of Drs. Leppman or Meriam support this determination. Rather, Dr. Leppman opined that Maginnis could stand or walk for only approximately two hours in an eight-hour workday,[1] and could lift or carry only less than ten pounds. (AR 510.) Likewise, Dr. Meriam opined that Maginnis "could probably do sedentary work" (AR 327), which would allow for standing or walking for "no more than about 2 hours of an 8-hour workday" and lifting "no more than 10 pounds at a time." SSR 83-10, 1983 WL 31251, at *5; *see Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("Sedentary work is defined as work that involves lifting up to ten pounds at a time and occasionally lifting and carrying light objects . . . [, and] generally involves up to two hours of standing or

---

[1] Although Dr. Leppman checked off a box in his May 2010 opinion which stated that Maginnis could stand and/or walk for "*at least* 2 hours in an 8-hour workday" (AR 510 (emphasis added)), implying that he believed Maginnis was able to stand or walk for longer than two hours, it can be inferred from the record that he did not believe Maginnis could stand or walk for longer than two hours. For example, Dr. Leppman opined on the same opinion form that Maginnis would need to sit for "about 6 hours in an 8-hour workday," leaving only two hours for other activity (standing or walking). (AR 511.) Moreover, Dr. Leppman's July 2010 opinion reveals that he did not believe Maginnis could work at all, let alone do sedentary work involving two hours of standing or walking. (AR 534-36; *see also* AR 486 (October 2009 food stamps form wherein Dr. Leppman opined that Maginnis was unable to work).) It is also noteworthy that the only options for Dr. Leppman with respect to boxes on the form allowing for approximately two hours of standing or walking were either "less than 2 hours" or "at least 2 hours" (AR 510); there was no box allowing Dr. Leppman to describe Maginnis as being able to stand or walk for two hours or less, or in other words, "no more than about 2 hours," as the regulations define "sedentary work" (SSR 83-10, 1983 WL 31251, at *5).

12

walking and six hours of sitting in an eight-hour work day.") (citing 20 C.F.R. § 404.1567(a)).

These two opinions of Dr. Meriam and Dr. Leppman are consistent with each other, which is a factor the ALJ should have considered. The ALJ also should have considered that Dr. Meriam's treatment notes support his opinion. Specifically, in these notes, Dr. Meriam documented that Maginnis had significant pain requiring a Vicodin prescription; noted swelling, tenderness, and very limited range of motion of the right ankle; described films showing "severe end stage arthropathy of the ankle"; recommended surgery; and diagnosed posttraumatic osteoarthritis. (AR 319, 323-25, 327, 328.) Likewise, Dr. Leppman's treatment notes support his opinion, documenting in his first visit with Maginnis after having reviewed her medical records and performed a physical examination, that Maginnis had "compression fractures . . . resulting in chronic pain at the mid[-]back, with associated muscle and joint pains, upper extremity numbness, and other symptoms"; and that Maginnis's "[m]obility and function are significantly affected by her back problem, and pain has tended to get worse over the years." (AR 359; *see also* AR 365 (chronic back and ankle pain continuing), 368 (back and ankle pain continuing, worse in damp weather), 524 ("back is killing me," "[a]nkle is snapping and cracking and popping").)

The only medical opinions cited by the ALJ in opposition to the opinions of treating physicians Dr. Leppman and Dr. Meriam are the May 2008 opinion of agency consultant Dr. Christine Conley (AR 431-38) and the July 2008 opinion of agency consultant Dr. Thomas Reilly (AR 447-50). But the ALJ failed to consider that neither of

these consultants examined or treated Maginnis, in contrast to Drs. Leppman and Meriam, who had fairly extensive treating relationships with Maginnis. In general, "the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability [because t]he advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." *Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) (quotation marks omitted) (citations omitted). The ALJ also failed to recognize that each of the consultants' reports was prepared well before Dr. Leppman offered his 2010 opinions, and neither consultant appears to have had the opportunity to consider Dr. Leppmans' or Dr. Meriam's opinions in their reports. In fact, Dr. Conley checked off a box in her report stating that there was "[n]o" treating or examining source statement regarding Maginnis's physical capacities in the file. (AR 437.) It is not clear if the ALJ was even aware of this deficiency in the consultants' reports. *See Tarsia v. Astrue*, 418 F. App'x 16, 18 (2d Cir. 2011) (where it is unclear whether agency consultant reviewed "all of [plaintiff's] relevant medical information," consultant's opinion is not supported by evidence of record, as required to override the opinion of a treating physician).

      Finally, it is worth noting that the opinion of Dr. Meriam and the May 2010 opinion of Dr. Leppman are somewhat consistent with the treatment notes from Prison Health Services, including the notes of Maginnis's treating prison physician, Dr. Uiterwyk. For example, a December 2008 Physician's Order from Prison Health Services records that Maginnis was placed on "restricted work duty for ankle pain." (AR 33; *see also* AR 52 ("restricted work duty (light)").) And a January 2009 Health Services

Transfer Form indicates that Maginnis required a bottom bunk and limited standing due to ankle problems. (AR 50; *see also* AR 61.) A February 2009 Physician's Order from Prison Health Services states that Maginnis was "unable to do standing for most of work day" due to ankle pain. (AR 31; *see also* AR 467 ("leg throbbing [with] light duty [work]"), 469 (did not want to walk due to "sore ankle").) Given their lack of specificity, however, these notes are not particularly helpful in determining what level of work Maginnis was capable of doing during her incarceration. The notes do not specify how long Maginnis was able to stand or walk, and do not indicate what "restricted work duty" (AR 33) or "restricted work duty (light)" (AR 52) entailed. Maginnis contends that "light work" in the prison system is not the equivalent of "light work" under the regulations, implying that the former is less exerting than the latter, but she cites no law or evidence to support this contention.[2] (*See* Doc. 15 at 10 n.3.) Although the prison treatment notes affect Maginnis's claim only minimally, if at all, given that neither the ALJ nor the Decision Review Board had an opportunity to review some of them prior to issuing a decision (*see* AR 1-3, 26), I recommend that, on remand, the ALJ consider them when assessing the medical opinion evidence and determining Maginnis's RFC.

## II. The ALJ Properly Assessed Maginnis's Credibility.

Maginnis contends that the ALJ erred in finding that her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible." (Doc. 15 at 13-14 (*see* AR 14).) It is the province of the Commissioner and not the reviewing

---

[2] Although Maginnis testified at the administrative hearing that her work at the prison consisted of part-time work involving three-hour shifts and allowing her to sit for unknown amounts of time (AR 92), there is no indication that her prison physician ordered these particular limitations, or that this level of work constituted "light work" at the prison in general.

court to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). Thus, if the Commissioner's credibility findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints. *Id.* (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982)). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). These reasons "must be grounded in the evidence and articulated in the determination or decision." *Id.*

Here, the ALJ explicitly considered the record and gave specific reasons for her determination that, although Maginnis was functionally limited as a result of her ankle and back impairments, there was "a lack of evidence supportive of her alleged inability to perform any work activity." (AR 14.) For example, the ALJ accurately observed that, after May 2001, Maginnis had "limited follow-up treatment with Dr. Meriam"; and that in May 2002, Dr. Meriam "dismisse[d] [Maginnis] from active treatment, noting her failure to attend her last three scheduled appointments." (*Id.*; *see* AR 325-26.) The ALJ also correctly noted that there was "no evidence of any treatment received by [Maginnis] for back pain and/or for any other impairment during the four[-]year period from August of 2003 through September of 2007." (AR 15.) It was proper for the ALJ to consider such a large gap in treatment in assessing Maginnis's credibility. *See Charlton v. Comm'r of Soc. Sec.*, No. 08-CV-142 (DRH), 2009 WL 838118, at *14 (N.D.N.Y. Mar. 26, 2009) ("gaps in treatment, missed appointments, . . . and contrary clinical and

16

objective findings may suffice for rejecting a plaintiff's credibility") (quotation omitted); *Carlson v. Barnhart*, No. 3:05CV1584 (SRU)(WIG), 2006 WL 2926818, at *13 (D. Conn. Aug. 30, 2006). The ALJ also correctly noted that, although Maginnis took Vicoden for pain before her incarceration, upon entering prison, "she declined such medication so that she might obtain a desired prison job." (AR 15; *see* AR 395.) Clearly, a claimant's decision to refrain from taking pain-relieving medication may be considered by an ALJ in determining the claimant's credibility with respect to her pain levels.

The ALJ also reasonably based her credibility determination on Maginnis's participation in a range of activities, stating: "Evidence of record with regard to [Maginnis's] overall level of daily activity is also found to be inconsistent with the alleged severity of her physical and mental symptoms and limitations." (AR 16.) Specifically, the ALJ considered that Maginnis was able to prepare simple meals, do laundry and some light housekeeping, use public transportation, shop, attend a counseling group three times a week, play cards, and engage in part-time work activity on a regular basis as an animal caregiver at a dog kennel (including feeding, watering, and cleaning dog crates; and socializing puppies). (AR 16-17; *see* 82-84, 201-05, 235-39, 264.) The record also demonstrates that Maginnis was able to care for and play with her dog, take her dog on very short walks, and do light work on a part-time basis while incarcerated. (AR 201-02, 235-36, 395.) Although "a claimant need not be an invalid to be found disabled," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), the Second Circuit has held that it is proper for an ALJ to consider a claimant's daily activities in determining whether the claimant is disabled. *See, e.g., Calabrese v. Astrue*, 358 F. App'x 274, 278

(2d Cir. 2009) ("in assessing the credibility of a claimant's statements, an ALJ must consider . . . the claimant's daily activities"); SSR 96-7p,1996 WL 374186, at *5-6 (July 2, 1996); 20 C.F.R. § 404.1529(c)(3)(i).

On this record, I see no error in the ALJ's credibility assessment, and find that the ALJ's decision to discount Maginnis's subjective complaints regarding the severity of her impairments is supported by substantial evidence. However, if this Report and Recommendation is adopted and the matter is remanded for further proceedings and a new decision, the issue is moot as the ALJ will be required to make a new credibility assessment based in part on Maginnis's testimony at the new hearing.

### III. On Remand, the ALJ Should Reassess Her Application of the Medical-Vocational Guidelines.

The Court need not address the issue of the ALJ's use of the Medical-Vocational Guidelines, given that a new RFC will be determined on remand, requiring the ALJ to begin her step-five analysis anew. Nonetheless, for purposes of providing guidance on remand, I note that, before an ALJ uses the Guidelines as a framework for finding that a claimant is not disabled, the ALJ should explicitly determine that the claimant's nonexertional impairments are not "significant," meaning they do not limit the range of light or sedentary work that the claimant can perform. *Rosa v. Callahan*, 168 F.3d 72, 78, 82 (2d Cir. 1999) (holding that reliance on the Guidelines may be precluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of work the claimant can perform; and, in these circumstances, a vocational expert or other similar evidence must be used to assist the

ALJ in determining that jobs exist in the economy which the claimant can perform). Applied here, if the ALJ does not so find, i.e., if the ALJ finds that Maginnis's nonexertional impairments *are* significant, the ALJ should employ the services of a vocational expert or similar evidence to assist in determining whether jobs exist in the national economy that Maginnis can perform. *See Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986) (holding that determination of whether the claimant's ability to perform light work was not significantly diminished by his nonexertional impairments could be made without resorting to a vocational expert, but if it was determined that nonexertional impairments significantly diminished claimant's ability to perform light work, it would be necessary to present either the testimony of a vocational expert or similar evidence with regard to the existence of jobs in the national economy that the claimant could perform).

## Conclusion

As explained above, although the ALJ's credibility determination was proper, substantial evidence does not support portions of the ALJ's assessment of the medical opinions and RFC determination. Specifically, the ALJ's assessment that Maginnis had the RFC to perform light work with conditions – including the ability to stand or walk for up to five hours with the option to alternate between sitting and standing, and the ability to lift or carry up to twenty pounds occasionally – is not supported by the medical opinions of treating physicians Drs. Meriam and Leppman. Moreover, remand is necessary for a new decision at step five regarding Maginnis's ability to do "other work." Accordingly, I recommend that Maginnis's motion (Doc. 15) be GRANTED, in part; the

19

Commissioner's motion (Doc. 20) be DENIED; and the matter be REMANDED for further proceedings and a new decision in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 14th day of March, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).